IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

---

### KNOXVILLE. SEPTEMBER TERM, 1916.

---

JOHN AND LACY PENNINGTON *et al. v.* THE STATE.

*(Knoxville.* September Term, 1916.)

1. **HOMICIDE. Evidence. Dying declarations. Admissibility.**
Where deceased said he could not live until the doctor came, and was praying, and an attendant who was present and observed his condition and heard what he said, testified that he knew he was going to die, he was sufficiently shown to have known himself to be in *extremis* to render his dying declarations admissible. (*Post, pp.* 537, 538.)

2. **HOMICIDE. Evidence. Dying declarations. Admissibility.**
The mere fact that an attendant present just before deceased's death said on preliminary hearing that she had not read the paper purporting to be deceased's dying declaration over to him, did not render the declaration inadmissible. (*Post, p.* 538.)

3. **CRIMINAL LAW. Harmless error. Witness under rule. Conduct of attorney. Statement of testimony of other witness.**
Where a witness under rule, when examined before the court, stated that a purported dying declaration had been read over to deceased, though an attorney then explained to the witness that such has been the testimony of a former witness, and the jury was then brought in and the witness repeated his testimony, the error, if any, was not prejudical. (*Post, pp* 538, 539.)

136 Tenn.]                    (533)

Pennington v. State.

Cases cited and approved: Pile v. State, 107 Tenn., 532; Smith v. State, 72 Tenn., 428; Ray v. State, 108 Tenn., 282; Nelson v. State, 32 Tenn., 237.

4. **HOMICIDE.    Evidence.    Dying declarations.    Preliminary proof.**

A witness who remains with the deceased a considerable time before his death, hears him talk, witnesses his demeanor and has full opportunity for reaching a correct conclusion, may testify to the opinion or conclusion formed from such circumstances that the deceased was aware of impending dissolution. (*Post, pp.* 539, 540.)

Cases cited and approved: State v. Johnson, 72 Iowa, 393; Garza v. State, 3 Tex. App., 286; Davis v. State, 120 Ga., 843; State v. Ju Nun, 53 Or., 1; Lewis v. State, 48 Tex. Cr. R., 614.

Case cited and distinguished. People v. Sanford, 43 Cal., 20.

5. **HOMICIDE.    Evidence.    Dying declarations.    Proof.**

A dying declaration of which witnesses testified that it was in the words of deceased as nearly as they could be written, that the statement was read to deceased, and he was asked if it was true, and replied that it was, and at such time that deceased was suffering very greatly, and that it was not clear whether he was physically able to have subscribed his name, the statement was admissible, though unsigned. (*Post, pp.* 540-542.)

Cases cited and approved: Beets v. State, 19 Tenn., 106; Moore v. State, 96 Tenn., 209; State v. Carrington, 15 Utah 480.

FROM CAMPBELL.

Error to the Criminal Court of Campbell County— XEN HICKS, Judge.

JOHN JENNINGS, JR., L. H. CARLOCK, A. J. AGEE and M. H. HOLLINGSWORTH, for plaintiffs in error.

FRANK M. THOMPSON, Attorney-General, for the State.

MR. JUSTICE GREEN delivered the opinion of the Court.

The plaintiffs in error were indicted for the murder of O. B. Byrd, and found guilty of voluntary manslaughter. They have appealed in error to this court.

We have discussed the facts orally and are of opinion that the conviction is well supported by the evidence.

The principal errors of law assigned relate to the admission in evidence of a certain paper writing purporting to have been the dying declaration of Byrd. This writing is as follows:

"April 13, 1915.

"This is my statement given by my own words. I met Lacy Pennington and John Pennington. Lacy says 'now you once had the advantage of me, but now I want to talk to you; don't you move while I do,' and I said, 'you have me boys where I can't help myself and don't shoot, don't kill me.' John Pennington stepped back and shot me. I turned my back to him and started to run, then he shot me again, then pushed me in the creek.'"

It will be observed that this statement was not signed by the deceased. It was introduced by Miss

Eldora Sharp who testified that she reduced the statement to writing; that it contained the words of the deceased, as near as she could get them; that deceased was lying on the bed and suffering very much at the time the writing was done. She was not able to say whether he had physical strength to have signed the paper or not.

Miss Sharp testified that deceased told her before she wrote out the statement that he didn't think he could live until the doctor came; that he was suffering; that he dictated very slowly to her and at intervals during the dictation was praying. She appears to have been present at the house where deceased was taken after he was shot and had abundant opportunity to observe him, notice his condition and hear his statements, and she testified that Byrd thought he was going to die when he made this statement. The statement was made in the afternoon, or evening, and Byrd died on the next morning.

Miss Sharp was asked if she read the statement over to Byrd after it was written out. She said that she could not recollect whether she did or not. She stated, however, that before leaving Byrd she asked him if the statement was true, and he replied that it was.

The statement not having been signed by Byrd, and Miss Sharp not being certain whether she read it over to him the court refused to admit it. The jury was then excused from the courtroom, and in their absence Miss Sharp was further examined. Likewise

Pennington v. State.

a witness named M. B. Moore was examined by the court, and Moore testified that he was present when Miss Sharp prepared the statement, and that she did read it over to the deceased.

The jury was then recalled and Miss Sharp testified further before them, and Moore testified that the statement had been read over to the deceased, and said statement was then permitted to go to the jury, as the dying declaration of Byrd.

It seems that when Moore was examined before the court as to whether or not the statement had been read to deceased, there had been no conversation between Moore and the State's attorneys, before Moore was put on the stand. After the jury returned, however, he talked with the attorneys for the State and they told him what Miss Sharp's testimony had been and about her failure to recollect whether or not the writing had been read to deceased.

The testimony of a court reporter, who took down the evidence at the committing trial, was introduced, from which it appeared that, according to the notes of the reporter, Miss Sharp had testified on the preliminary hearing that she had not read over this dying declaration to Byrd.

It is first objected that the proof does not show deceased realized that he was in *extremis* when the declaration was made.

Manifestly this objection is not well founded. The proof shows that deceased said that he could not live until the doctor came; that he was praying;

and Miss Sharp, who was present, observed his con-
dition and heard what he said, testified that he knew
he was going to die.

It is next contended that the dying declaration
was inadmissable by reason of the testimony of the
court reporter; that Miss Sharp said, on the pre-
liminary hearing, that she had not read the paper
over to the deceased.  Such testimony did not render
the dying declaration inadmissable by any means;
it went to the credibility of Miss Sharp and the cred-
ibility of the declaration; not to the competency of
the declaration.

It is urged that the court erred in permitting the
witness M. B. Moore to testify that this paper writ-
ing was read to deceased, after Moore had been talk-
ed to by the Attorney-General and told the substance
of Miss Sharp's testimony—Moore being under the
rule.

The trial court will not be put in error ordinarily
for permitting a witness under the rule to testify, al-
though such a witness has heard the evidence, or part
of it, when there are circumstances justifying such
action on the part of the court below.  We have
numerous cases in which it has been held that a trial
court has discretion in such matters and the rule
may be relaxed.  *Pile* v. *State,* 107 Tenn., 532, 64 S.
W. 477; *Smith* v. *State,* 4 Lea, 428; *Ray* v. *State,* 108
Tenn., 282, 67 S. W., 553; *Nelson* v. *State,* 2 Swan.,
237.

Moreover, in this case it appears that the witness
Moore made the same statement in the matter when

Pennington v. State.

examined in the presence of the court, before he had advised with counsel and heard about the testimony of Miss Sharp, that he made before the jury after he conferred with counsel and learned what Miss Sharp had said. It is obvious, therefore, that plaintiffs in error were not prejudiced in any way by the communication between the State's counsel and this witness, as to what had transpired in the courtroom. If there was any error, it was not prejudicial.

It is further insisted that the court erred in permitting Miss Sharp to testify that deceased realized he was going to die. This assignment of error is not well taken. There is abundant authority to the effect that a witness who remains with the deceased a considerable time before his death, hears him talk, witnesses his demeanor, and has full opportunity for reaching a correct conclusion, may testify to the opinion, or conclusion formed from such circumstances, that the deceased was aware of impending dissolution.

The supreme court of California says that such an expression of such a witness is not a mere opinion of the witness in the objectionable sense. "It approaches to knowledge, and is knowledge, so far as the imperfection of human nature will permit knowledge of these things to be acquired; and the result thus acquired should be communicated to the jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained

by the observations of others." *People* v. *Sanford,* 43 Cal., 29.

To like effect, see *State* v. *Johnson,* 72 Iowa, 393, 34 N. W., 177; *Garza* v. *State,* 3 Tex. App., 286; *Davis* v. *State,* 120 Ga., 843, 48 S. E., 305; *State* v. *Ju Nun,* 53 Or., 1, 8, 97 Pac., 96, 98 Pac., 513; *Lewis* v. *State,* 48 Tex. Cr. R., 614, 89 S. W., 1073.

We may add that there is other proof in the record heretofore pointed out tending to show that deceased realized that he was going to die, and the admission of this so-called opinion of Miss Sharp as to deceased's state of mind was not harmful to plaintiffs in error.

The last assignment of error, with reference to the dying declaration, is that the paper, not being signed by the deceased, was not primary evidence and should not have been admitted, but that the same could have only been looked to to refresh the memory of the witness in giving oral testimony as to the dying declaration.

In *Beets* v. *State,* Meigs, 106, an unsigned paper purporting to contain a dying declaration was excluded. In that case, however, the witness did not undertake to testify that deceased stated the facts contained in the paper. Witness only said that he took down the statement, and the paper he produced was the copy from the original.

In the case before us Miss Sharp says that the paper introduced was in the words of deceased as near as she could get them. Moore testifies that the

Pennington v. State.

statement was read to deceased. Miss Sharp again testifies that she asked deceased if the statement was true, telling him she wanted to know in case he died, and deceased replied that it was true. Deceased was shown to have been suffering very much, and it is not clear that he was physically able to have subscribed his name to this paper.

Under the circumstances stated, we think that deceased should be held to have adopted this statement as much as if it had been signed by him.

In *Moore* v. *State,* 96 Tenn., 209, 33 S. W., 1046, a written declaration of one Pemberton was admitted signed ''J. D. Pemberton, by J. T. Saunders.'' Saunders identified the paper and read it to the jury. He wrote it, at the dictation of Pemberton, as the dying declaration of the latter, and then affixed the signature in question. The court said there was nothing in the record to rebut the presumption that the signature was made by Saunders for Pemberton, on account of the latter's enfeebled condition.

It has been held that a declaration made in *extremis,* committed to writing by another, and not signed by the deceased, is not inadmissable because of lack of such signature, where the deceased is physically unable to sign it. *State* v. *Carrington,* 15 Utah, 480, 50 Pac., 526.

We think this case announces a correct result. On the facts disclosed by this record, we think we may indulge the presumption, as the court did in

*Moore* v. *State,* supra, that deceased failed to sign the statement, here introduced, because of his physical condition, and we are of opinion that a dying declaration, dictated by the deceased, reduced to writing, read over to him, should not be excluded where the deceased failed to sign it on account of his physical weakness.

We do not consider it necessary to discuss other assignments of error. All of them are overruled, and the judgment below will be affirmed.