LLOYD C. BLACKWOOD, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

(*Knoxville,* September Term, 1958.)

Opinion filed March 12, 1959.

W. B. Lewallen, J. Carson Ridenour, Clinton, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Justice Swepston delivered the opinion of the Court.

Plaintiff in error, Lloyd C. Blackwood, former County Court Clerk of Anderson County, Tennessee, hereinafter called defendant, was convicted for the embezzlement of funds in the amount of $23,661.69, which came into his possession as County Court Clerk of said County and as the property of the State of Tennessee and said County in violation of T.C.A. secs. 39-4231 and 39-4233. His punishment was fixed at not more than 3 years in the State Penitentiary.

The above sections of the Code are as follows:

"39-4231. Embezzlement by public officer—Penalty. —If any person charged with the collection, safekeeping, transfer, or disbursement of money or property belonging to the state or any county or any municipality in the state, *use any part of said money or property by loan, investment, or otherwise, without authority of law, or convert any part thereof to his own use in any way whatever,* he is guilty of embezzlement, and for every such act, upon conviction, shall be punished as in case of larceny, and fined in a sum equal to the money embezzled, to be applied in satisfaction thereof."

"39-4233. Prima facie evidence of embezzlement.— The refusal or willful neglect of any public or private officer, clerk, agent, or other person mentioned in secs. 39-4231, 39-4232, to pay over the money or other property so placed in his care or custody, upon demand therefor by the proper person or authority entitled to receive the same, or as required by law, or the selling, mortgaging or pledging of any such property, *or the withdrawing,* loaning or depositing of any such moneys, by such officer or other person *for his own profit or advantage,* without express authority, *shall in each case be prima facie evidence of the embezzlement thereof.*"

The defendant has filed ten assignments of error. They will not be considered seriatim but in such order as we deem more desirable.

The second assignment of error complains that the instrument charging the defendant with an offense was faulty because it did not inform him who the prosecutors

were nor could it be determined whether same was a presentment or an indictment.

 This must be overruled for two reasons: (1) seasonable objection was not made; the instrument had already been read to the jury and defendant had plead to the merits (not guilty); hence the motion to quash came too late. *Driscoll v. State,* 191 Tenn. 186, 189, 232 S.W.2d 28; (2) the instrument is a presentment as defined in *State v. Davidson,* 171 Tenn. 347, 350, 103 S.W. 2d 22, and other cases cited in Gilreath's Seventh Edition "History of a Lawsuit" Secs. 723-4. T.C.A. sec. 40-1704, requiring a prosecutor to be marked on an indictment, does not apply to presentments. Gilreath, *ibid;* And even if this instrument were an indictment, no prosecutor would be required by reason of T.C.A. sec. 40-1705(18).

The first assignment of error relates to the preponderance of the evidence. It will be necessary to make a preliminary statement in order that this assignment of error, along with several others, may be properly understood. The defendant was elected County Court Clerk in the election of 1954 and took office on September 1 of that year. This alleged shortage was finally discovered in October 1957, after the State Auditors had spent a good many months auditing the defendant's books. The defendant did not take the stand. The witnesses testifying for the State were Joe T. Simpson, who with the assistance of witness Jack E. Ingram, made the audit which shows the alleged shortage; William B. Johnson, who is Chief County Auditor of the office of Comptroller of the Treasury; J. D. Yarnell, County Judge for Anderson County; L. H. Gregory, who is supervisor and examiner for the 17% Wholesale Beer Tax in the De-

partment of Finance & Taxation; George Ridenour, Trustee of Anderson County.

The case made out by the State is as follows: It was shown that during this period of time the law required the wholesale distributors of beer to file a sworn report of each and all of their beer sales at stated intervals with the Department of Finance & Taxation at Nashville and to pay the tax to the County Court Clerk in the County of sale. Mr. Simpson testified that in making this audit he relied upon the accuracy of these sworn reports filed by the beer wholesalers; that there was a discrepancy of $23,661.69 for the period commencing with the induction of the defendant into office in 1954 up to the completion of the audit in 1957 between the amount of tax shown by these sworn reports to have been paid by the whole-salers ·and the amount shown on the receipt books in the County Court Clerk's office. He stated that he reported this matter to the County Judge of Anderson County, who arranged for a conference with the defend-ant, at which conference there were present the County Judge Yarnell, Mr. Simpson, Mr. Johnson and Mr. Ingram; that when confronted with the showing of the audit the defendant said: ''Gentlemen, I am at your mercy. I took it and spent it on my family.'' The same thing was testified to by the other three present.

The County Judge then demanded the repayment of this amount of money and after the defendant was given time in which to make good the default, as is customary, he paid the full amount into the County Trustee.

Now it would seem obvious that, unless there is something wrong with the foregoing evidence and that any such defects were seasonably and specifically pointed

out by objection and exception, or motion to strike, the evidence does not preponderate against the verdict. The testimony of the three men to the effect that the defendant stated that he had spent the money or used the money on his family constitute an admission against interest. Such an admission is not conclusive unless it amounts to an *estoppel,* which it does not in this case, and it may be rebutted. *Evans v. Boggs,* 35 Tenn.App. 354, 375, 245 S.W.2d 641.

The defendant did not take the stand, however, and expressly deny having made such admissions. Moreover, he made a further admission by his conduct in paying the exact amount of money into the hands of the County Trustee. There was a suggestion in the brief in his behalf that he paid the money in promptly because he was under bond and that he did so to protect the bonding company and to save the possibility of about $3,500 penalty for not paying the money in as provided in the second of the above quoted Code sections. If it be said, however, that there is any ambiguity in this act of paying in the money, there is still no evidence of any statement made at the time to characterize the act so as to bring it within the rule of verbal act or acts, as discussed in Wigmore on Evidence, 1940 Ed., Sec. 1772 et seq.

We, therefore, pass on to assignment 4. This contains three parts. First, it is said that the court erred in allowing the introduction of multigraphed audits over the objections of the defendant, which had been compiled and edited by third parties other than the witness who attempted to introduce the same, which was in direct contradiction of the best evidence rule.

█ The answer to that simply is that, while objection was made in the fore part of the testimony of Mr. Simpson on that ground, actually the same was admitted by the court expressly on condition that the original papers prepared by this witness in making the audit be made available in evidence and if defendant wanted to challenge any items, and the second day of the trial the original work sheets and the compilation of same showing the total amount of the shortage were produced and made a part of the evidence as Exhibits 7 and 8 to this witness' testimony.

Next, it is said that it was error to allow the introduction of the beer tax wholesalers' reports, over the objections of the defendant, by the witness L. H. Gregory, when the said beer tax reports showed upon their face that they were not prepared by the witness but had been prepared by third party beer wholesalers who are not privy to this lawsuit and that the same had been mailed, carried, or given to the Department of Finance & Taxation by parties unknown personally to the witness who introduced the same.

█ The answer to that is simply this. When the witness Simpson was testifying there was an objection to the admission of these sworn reports on the ground that they were hearsay and that the persons making the reports were not available for confrontation before the defendant for cross-examination. That is beside the point now, however, because when they were offered while the witness Gregory was testifying there were one or two objections but none of them upon the ground stated in this assignment of error. The record must show an objection and an exception on the specific ground

or grounds stated in the assignment. Gilreath's Seventh Edition History of a Lawsuit, Sec. 337, last paragraph.

The third part of this assignment complains of the introduction of the beer tax reports of the Valley Import Company, which it is alleged was in no way connected with this case; but this is immaterial and not reversible error because it is certainly not prejudicial.

The third assignment of error is that the court failed to charge the theory of the defendant, to-wit, that the court in admitting into evidence these wholesale beer dealers' reports, some 800 in number, deprived defendant's counsel of the opportunity to cross-examine those several affiants who made these reports. This has already been answered by what has just been said above.

■ Assignment 9 is quite akin to the last two above in that it is asserted that the entire trial and the conduct thereof was in violation of Art. I, Sec. 9 of the Constitution of Tennessee and of Sec. 1 of the 14th Amendment of the Constitution of the United States. In the first place, this assignment is too general and in the second place, it has been answered in substance already.

■ Assignment 7 asserts that the entire record is devoid of any proof of venue. There is no merit in this for the following reasons. This man was County Court Clerk of Anderson County and necessarily a resident thereof. Schedule F2B appearing on pages 16 and 17 of the audit, Exhibit 1, and the same schedule on page 11 of the audit, Exhibit 2, show for the period from October 1, 1954, to August 31, 1957, the detail of the items for which official receipts were not issued for the payment of this beer tax, the total of which is the amount of the shortage. Exhibit 19 consists of 5 checks of the

East Tennessee Beer Distributors payable to Anderson County and indorsed by the defendant as County Clerk and deposited in the Union-Peoples Bank of Clinton. Exhibit 20 consists of 8 checks of Volunteer Beverage Company payable to the Anderson County Court Clerk and indorsed by Lloyd C. Blackwood as such Clerk and deposited in the First National Bank of Clinton, Tennessee. These checks are shown on the said Schedule F2B. There is no suggestion in the evidence that any misappropriations occurred outside of Anderson County and as a matter of fact, there is evidence to indicate that the intention to violate the statutes was formed near the beginning of the defendant's term of office because these so-called unofficial receipts were issued from a old receipt book which serially antedates the two books containing the so-called official receipts, the first one of which likewise commences with the beginning of the defendant's term of office and the two of them run all the way through to October 1957. Moreover, since venue is not an element of the criminal offense but is simply to fix the right of the court to try the case, it may be shown by the preponderance of the evidence and by circumstantial evidence only. *Gilliland v. State,* 187 Tenn. 592, 216 S.W.2d 323.

It would seem to be rather far-fetched to assume that this defendant departed from the county every time he appropriated any of the funds to his own use for this period of about 3 years. Under the circumstances, it would seem that T.C.A. sec. 40-105 would be applicable, which statute provides:

"When an offense is committed partly in one (1) county and partly in another, or the acts or effects

thereof constituting or requisite to the consummation of the offense, occur in two (2) or more counties, the jurisdiction is in either county.''

See also 18 Am.Jur., 610, Sec. 65, for the general principles.

Assignment 8 has been covered in substance already.

Assignment 10 contains two criticisms of the charge of the court to the jury. We have examined the charge and think there is no merit in same.

Assignment 6 is to the effect that the trial judge charged the grand jury in the presence of some members of this trial jury. The record does not contain any evidence of same. On a motion for a new trial the court simply stated that he did not know but it was possible there may have been two or three of those in the courtroom who later became members of the trial jury. We do not understand from the record by any means that the judge stated that as a fact, but only as a possibility.

 The remaining assignment is No. 5. This raises the question that the defendant should have had a new trial because the jurors were separated during the night intervening the two days of the trial. The trial judge went fully into the evidence of members of that jury as well as of the two officers in charge of the jury and of certain people who were in the lobby of the hotel where the jury spent the night in Clinton. It is a fact that there is no accommodation for a jury except at the small hotel there, which has about 25 rooms, and on that night all rooms except one were occupied. The proof shows that the jury had their evening meal in one end of the dining room and their table was about 5 feet away from

the nearest table; after dinner they were seated around in the small lobby which is only about 20 x 20 feet, but there is no indication that anyone talked to any of the jurors other than that one of the jurors walked down the hallway and asked about drinking water and subsequently a pitcher of water was brought in for their use; there was no room in the hotel big enough to sleep the entire jury and they were separated that way into several rooms and they had to use a common bathroom and lavatory. Under the circumstances, they were kept together just as well as humanly possible and all of the jurors testifying said that no one even attempted to talk to them and that they did not discuss the case with anybody. The trial judge concluded that there was no evidence to impugn the conduct of the jury and the sanctity of the verdict and he, therefore, overruled the motion for a new trial. We think that he was correct in so doing.

For the reasons above stated, all the assignments of error are overruled and the judgment below is affirmed.