326 S.W.2d 448 (1959)
J. H. (Billy) HOPPER, Plaintiff in Error,
v.
STATE of Tennessee, Defendant in Error.
Supreme Court of Tennessee.
June 5, 1959.
*449 J. B. Avery, Jr., Alamo, for plaintiff in error.
James M. Glasgow, Asst. Atty. Gen., for the State.
*450 SWEPSTON, Justice.
J. H. Hopper, plaintiff in error, hereinafter called defendant, was indicted and convicted for embezzlement of property belonging to the Highway Department of Crockett County and was sentenced to serve 11 months and 29 days in the County Jail.
He has appealed and assigned 31 errors some overlapping others. These will be grouped for the purpose of discussion.
Before discussing the facts, we will dispose of assignments 1, 6 and 18. They are predicated on the false assumption that each count of an indictment must conclude "against the peace and dignity of the State" (Art. VI, Sec. 12, Tenn.Const.), but such is not the law. Rice v. State, 1871, 50 Tenn. 215.
In the instant case the two counts were respectively for embezzlement and larceny, and the above concluding words appeared only at the end of the second count. The court instructed the Attorney General not to read the larceny count to the jury and the case was tried exclusively on the first count charging embezzlement. Accordingly these assignments are without merit and are overruled.
Assignments 2, 8, 9, 10, 20 and 22 will be discussed together. No. 2 is that the evidence fails to show that any crime was committed within the jurisdiction and venue of the court. No. 8 is that the State failed to prove the crime of embezzlement because it is alleged that the proof does not show that the true owner, i.e., Crockett County, did not have possession of the money alleged to have been embezzled prior to the time when it came into the possession of the defendant and that, on the contrary, the proof shows it more probably than not that Crockett County did have possession of the check alleged to have been embezzled before it came into the hands of the defendant, so that it is asserted the defendant could not be guilty of embezzlement. Nos. 9 and 10 are that there is no evidence to support the verdict and that the evidence greatly preponderates against the verdict. Nos. 20 and 22 relate to respectively a special request of the State which was given and a special request of the defendant which was refused; these will be referred to in detail after the statement of facts.
The State's brief contains a correct statement of the facts and is substantially as follows: Defendant was employed as a clerk in the Highway Department of Crockett County when it was discovered that there was a shortage in the accounts. His duties included the handling of the accounts for the department and the keeping of various records in connection with the department's activities. Prior to his employment by the County, he had held responsible and respectable positions in the community, having taught school for several years; having been sheriff of the County for three terms, and being more recently the operator of a grocery and restaurant business.
A practice had developed in Crockett County of permitting the sale by the County Highway Department of lumber for bridges and culverts at cost. In addition, the department sold gasoline to the various school districts in the County for use in school busses. In payment for these materials and supplies the purchaser either mailed a check to the Highway Department or gave it to the driver of the vehicle from which the delivery was made. In some instances cash may have been paid for lumber. When the checks or money were received, it was Hopper's duty to handle them for the department and deliver them to the county trustee as receipts to be credited to the department. The trustee required the defendant as the clerk of the Highway Department to put the indorsement of the Highway Department by defendant on these checks, after which the trustee would deposit them in a proper bank account.
The Private Acts creating the County Highway Department do not authorize such sales. Neither do they provide for a clerk's bond. In addition, the department did not *451 have any written or prescribed policies, rules or regulations for handling such sales of materials and supplies. Some of the funds or checks may have been received by employees other than Hopper, but it was Hopper's duty to account for them.
The indictment after alleging that defendant was charged with the collection, safekeeping, transfer or disbursement of money or property belonging to Crockett County and the County Highway Department, then alleged "did unlawfully and feloniously embezzle, convert, take, and/or appropriate certain property, to-wit: the hereinafter described check, belonging to Crockett County, Tennessee, and the County Highway Department or garage thereof, with intent to convert the same to his own use and deprive the true owner thereof; and indorsing said above referred to check as clerk of said Highway Department or garage and cashing same, which said check came into his hands as clerk or bookkeeper of said Highway Department or garage, said check herein described, being dated the 1st day of May, 1956; No. 607; payable in the amount of $32.61 to County Highway garage, for gas and hauling; drawn on the Bank of Crockett Mills Bank; and drawn on or signed Crockett Hills School Bus by M. Carlton; and converting said property of the value of $32.61 to his own use and depriving the true owner thereof".
The evidence showed that said check was one of many checks that were not credited to the accounts of the County, but had been indorsed by the defendant as clerk of said department in the proper manner and had been cashed at a liquor store in Dyersburg, Dyer County, Tennessee. The manager of the liquor store stated that he knew the plaintiff in error and had sold whisky to him on a number of occasions and that his employer did business with the defendant and had instructed the employee to do likewise; that frequently when the defendant came into the store and bought whisky with checks payable to the County the checks amounted to more than the price of the liquor and the difference was handed to the defendant in cash.
After the shortage was discovered, the defendant paid the deficiency shown by an audit. He admitted having taken and converted the department's money, according to the testimony of witnesses. The defendant did not testify.
There is no doubt about the proof showing guilt and, so far as the facts before the jury are concerned, there is no reason why we should disturb the jury verdict.
With particular reference now to the question of venue, we have repeatedly held that venue may be shown by a preponderance of the evidence and it may be shown either by direct or circumstantial evidence alone or by both. Gilliland v. State, 187 Tenn. 592, 216 S.W.2d 323; Blackwood v. State, 204 Tenn. 682, 325 S.W.2d 262.
There is no merit to the insistence that the proof fails to show that Crockett County did not have possession of the check before it was converted to the defendant's own use. The proof is that the audit disclosed that the defendant had not entered this check along with many others on the books. This alone is evidence of embezzlement. Lambeth v. State, 1877, 3 Tenn.Cas. (3 Shannon) 754.
In any event, however, there could be no doubt about the venue in this case. T.C.A. § 40-105 provides:
"When an offense is committed partly in one (1) county and partly in another, or the acts or effects thereof constituting or requisite to the consummation of the offense, occur in two (2) or more counties, the jurisdiction is in either county." Blackwood v. State, supra; see also 18 Am.Jur., 610, Sec. 65; Note 3 in the 1958 Supp.
It seems perfectly evident to us that the defendant had conceived this scheme for the purpose of misappropriating the property *452 of the County and that he had the intention to and did embezzle the check in question as well as the numerous other checks in Crockett County by converting them to his own use, even though he did not receive the money on them until he cashed them at the liquor store in Dyer County. The judge so charged the jury and this is the basis of assignment 20 which we accordingly overrule. Assignment 22 is likewise overruled because the special request of the defendant, which the court refused, to the effect that embezzlement requires that the true owner must never have possession was inappropriate to the undisputed proof in this case, to wit: that the check in question as well as the other checks which he embezzled were never entered upon the books where they should have been and they were simply pocketed for the defendant's criminal purpose without ever having been in the possession of the true owner. These defalcations occurred over a period of two years 1954-1956.
All of the above numbered assignments are accordingly overruled.
The 4th and 5th assignments arise out of the part of the charge to the jury wherein the court charged that if they found the defendant guilty they could recommend that the court fix the punishment at confinement in the County Jail. The jury acted accordingly and the judge fixed the period as stated heretofore at 11 months and 29 days.
It is elaborately argued that the action of the court was a violation of Art. I, Secs. 6 and 9 with reference to jury trials.
T.C.A. § 39-4231 provides as follows:
"Embezzlement by public officerPenalty.If any person charged with the collection, safekeeping, transfer, or disbursement of money or property belonging to the state or any county or municipality in the state, use any part of said money or property by loan, investment, or otherwise, without authority of law, or convert any part thereof to his own use in any way whatever, he is guilty of embezzlement, and for every such act, upon conviction, shall be punished as in case of larceny, and fined in a sum equal to the money embezzled to be applied in satisfaction thereof."
Under T.C.A. § 39-4204 the punishment for petit larceny is not less than one nor more than five years. Then under 39-4205 it is provided as follows:
"Lighter penalty permitted on recommendation of jury in case of petit larceny or receiving stolen goods.In all cases of petit larceny, and in all prosecutions for receiving stolen goods under the value of sixty dollars ($60.00), the court may, in the event of conviction, on the recommendation of the jury, substitute, in lieu of punishment in the penitentiary, fine and imprisonment in the county jail."
In Woods v. State, 130 Tenn. 100, on pages 106 and 107, 169 S.W. 558, at page 559, L.R.A. 1915F, 531, among other things, it is held as follows:
"It is not essential that the jury assess the punishment, unless the statutes of the state so direct. The power to declare what shall be the appropriate punishment for an ascertained crime belongs solely to the Legislature. That body may provide a minimum and a maximum, and leave it to the discretion of the jury to fix a definite term within these limits; or it may provide a single term, as is sometimes done, leaving nothing for the jury, except to respond to the issue of guilty or not guilty. The right to have the jury assess the punishment was not a part of the right of trial by jury at common law (citing cases)."
Now the legislature has prescribed that where the punishment is as low as one year's imprisonment in the penitentiary the prisoner may be sent to the county jail *453 for any period less than 12 months. There are two sections of the Code that apply. One is T.C.A. § 39-4205, supra, which is the Act of 1829, Ch. 23, sec. 26, which gives the power to the judge. The other is T.C.A. § 40-2703, which is the Act of 1859-1860, Ch. 63, which gives the power to the jury.
The latter act was construed with reference to the former act in the case of Bolton v. State, 45 Tenn. 650, 657, in which it is said:
"but, when taken in connection with the several statutes prescribing the punishment of various offenses, as low as one year in the penitentiary, and giving the Court power in such cases to commute the punishment to imprisonment in the county jail, we think the object and intention of the Legislature, in the passage of the Act, was, to give the jury the power of commuting the punishment in cases of petit larceny, and all other offenses, where the punishment was prescribed as low as one year's imprisonment in the penitentiary, by imprisonment in the county jail for less than twelve months. By the Code, sec. 5266, the power was vested in the Circuit Judge, to commute the punishment in cases of petit larceny and other offenses of a low grade, to imprisonment in the county jail; and the object and intention was, to give to the jury a similar power in all such cases, where the punishment was as low as one year in the penitentiary."
While there may be some inadvertent expressions seemingly to the contrary in some of the Reports, it is evident from the above cited authority of ancient vintage and from an examination of these two Code sections that as the law now stands and has been since the Act of 1859-1860, supra, the jury may in these lesser felonies, where the minimum penalty is one year in the penitentiary, fix the punishment by confinement in the county jail or workhouse for any period of less than twelve months except as otherwise provided; or the jury in its discretion may recommend that the judge fix the punishment by confinement in the county jail.
There was no error in the action of the trial judge in this regard. We accordingly overrule assignments 4 and 5.
The 7th assignment is with regard to alleged misbehaviour in the jury room. The trial judge heard the proof and we think his conclusion was correct that there was no merit in this claim which was made on the motion for a new trial.
By the 12th assignment complaint is made that the court allowed the State to challenge peremptorily the juror Porter after 12 jurors had been accepted and after defendant had exercised all of his peremptory challenges. Porter was the 7th juror selected and at the time the defense had exercised 3 peremptory challenges and the State 2.
The trial judge ruled that it was discretionary with the court as to whether the challenge would be allowed and after he had had the attorney general state his reasons in the absence of the jury, the juror was rejected.
There is no evidence whatever that this defendant did not have a fair and impartial jury and trial. This part of the assignment is overruled on the authority of Nelson v. State, 200 Tenn. 462, 292 S.W.2d 727, wherein the cases are reviewed. There is likewise no merit to the other part of the assignment for the same reason assignment 13 is overruled.
Assignments 14, 15 and 16 relate to some extraneous matter that got into the evidence and to some remarks by the district attorney general alleged to have been prejudicial. We think that no prejudice was shown by reason of any of this and, therefore, overrule the assignments.
Assignment 17 is contradicted by the record page 316.
There is no merit in assignment 19.
*454 Assignments 21 and 25 to 30, inclusive, are overruled. Under T.C.A. § 39-4233, among other things, the refusal or wilful neglect of any public or private officer, clerk, agent or other person mentioned in Sections 39-4231 and 39-4232 to pay over the money or other property upon demand constitutes prima facie evidence of the embezzlement thereof. On the other hand, the repayment of the money is not evidence of innocence and the court properly charged the jury that the fact that this defendant had repaid the money was no defense and that it had no bearing on the guilt or innocence. Assignments 23 and 31 are overruled. The complaint arises out of the fact that the jury, after having retired, reported back and upon being questioned by the judge as to how they stood, replied that they stood 11 to 1. The court then gave them a charge which is in substance and almost verbatim the same charge that was approved in Simmons v. State, 198 Tenn. 587, 594, 281 S.W.2d 487.
The jury were not able to agree that day so they had to spend the night in the custody of the officers and did not reach a verdict until the next day. There is nothing unusual about a situation of that kind and the charge in the assignments of error that the judge interfered with the jury in any way or indicated how they should find is utterly without foundation.
Assignment 24 complains that the judge charged that any one charged with embezzlement of money collected by him as a public officer cannot defend on the ground that his employer was paid funds through ultra vires or an unauthorized transaction, it being alleged that the defendant was not being tried under the public officers' statute, and so on.
We think there is no merit in this. See Mays v. State, 182 Tenn. 316, 186 S.W.2d 334. Any person charged with the collection, safekeeping, and so on, of money or property belonging to the state or any county is covered by this statute, T.C.A. § 39-4231. See also Sec. 40-1828.
We have examined this record carefully and the assignments of error and can find no merit in any of them. The judgment below is affirmed.