HERMAN WOODROW EZELL, BILLY RAY EZELL and
FREDDIE EZELL

*v.*

STATE OF TENNESSEE

413 S.W.2d 678.

(*Knoxville,* September Term, 1966.)

Opinion filed March 10, 1967.

WILLIAM G. McPHEETERS and THOMAS F. GUTHRIE, Dayton, for plaintiffs in error.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. Fox, Assistant Attorney General, Nashville, for the State; C. P. SWAFFORD, Assistant District Attorney General, Dayton, prosecuted the case for the State in the trial court.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The parties will hereinafter be referred to as they appeared in the trial court; that is, the defendants and the State.

On December 6, 1965, the defendants were indicted by the grand jury of Rhea County, Tennessee. Herman Woodrow Ezell was indicted on a charge of murder for the alleged slaying of Lloyd Bostic. Herman Ezell's sons, Billy Ray Ezell, Freddie Ezell and Vernon Lee Ezell, were indicted for aiding and abetting in the alleged crime.

On January 21, 1966, the defendants were tried in the Criminal Court of Rhea County. At the close of the State's proof, a nolle prosequi was taken as to the defendant, Vernon Lee Ezell. Upon hearing all the testimony, the jury was of the opinion that the remaining three defendants were guilty. Herman Woodrow Ezell was found guilty of second degree murder and was sentenced to ten to fifteen years in the State penitentiary. Billy Ray Ezell was sentenced to two to three years on a conviction of voluntary manslaughter; and Freddie Lee Ezell was convicted of second degree murder and sentenced to serve not less than ten years. It is from these convictions that appeal is made to this Court.

The alleged facts out of which the indictments and subsequent convictions arose are, as follows:

On the evening of September 18, 1965, one Lloyd Bostic was shot and killed in his business establishment, the Watts Bar Inn, which is a combination grocery store and beer tavern located in Rhea County.

An investigation revealed that earlier in the day on which the shooting occurred, Freddie Ezell and Vernon Lee Ezell had visited the Watts Bar Inn on two occasions. On the first occasion Mr. Bostic ejected the Ezell brothers on account of their disorderly conduct. Subsequently, both Vernon and Freddie Ezell returned and proffered

their apology to Bostic. As a result, Bostic advised the two defendants that their presence was welcome, provided they conducted themselves properly.

Later in the evening on the day in question, the defendant, Herman Woodrow Ezell, accompanied by his three sons, Freddie, Billy Ray and Vernon Lee, drove to the Watts Bar Inn. While the sons remained in the automobile, Herman proceeded alone into the tavern, where he purchased some beer to be consumed on the premises. Before he had consumed the beer, his son Freddie entered and also ordered some beer. Shortly thereafter an altercation arose between Herman Ezell and Mr. Bostic regarding the fact that Mr. Ezell's sons had been ejected earlier in the day. A fight ensued and the combatants fell to the floor in a struggle. During the conflict, Freddie intervened and struck Bostic with a glass jar. Billy Ray attempted to participate in the scuffle but was restrained by a group of spectators. Eventually, Herman announced that he wished to terminate the fighting, whereupon Mr. Bostic agreed to release him so long as he would act peacefully.

After being released, the defendant, Herman Ezell, proceeded to walk away from the premises, then turned around and shouted, ''By God, I am, I'm going to do what I came down here to do, I'm going to kill him.'' Thereupon he drew a pistol and began shooting the deceased, who with the help of some other people, was able to overpower the defendant, Herman Ezell. During the ensuing struggle, Billy Ray and Freddie Ezell again attacked the deceased.

The decedent was immediately transported to a hospital, but was dead upon arrival.

Upon the convictions of these defendants, a motion for a new trial was made by counsel for the defendants. From the denial of that motion, the parties are presently before this Court to make the following assignments of error:

(1) That the trial court erred in refusing to allow Vernon Lee Ezell to testify on behalf of the defendants.

(2) That the trial court erred in requiring the trial to continue upon learning that three of the defendants' witnesses, all duly subpoenaed, were absent.

(3) That the trial court erred in requiring the trial to continue for such a long period of time.

(4) That the trial court erred in admitting the testimony of a certain Tennessee Highway Patrolman, since the Attorney General failed to comply with T.C.A. 40-2241, regarding the giving of a list of witnesses to the defense counsel upon demand.

The first assignment of error arises out of the fact that, at the close of the State's proof, a nolle prosequi was taken as to the defendant, Vernon Lee Ezell. Unaware that he was then subject to the rule excluding witnesses which had been invoked at the commencement of the trial, Vernon Ezell remained seated at the defense table. After hearing the testimony of two of the defendants, Vernon was asked to testify; whereupon the trial judge ruled that he had violated the rule and was therefore incompetent as a witness.

It is asserted by counsel for the defendants that, upon the taking of a nolle prosequi as to one of several criminal defendants who are being tried jointly, it is the

duty of the trial court to advise that person that he then becomes subject to the court's rule excluding witnesses from the courtroom, and therefore must leave the room if he intends to testify. We feel compelled to agree.

■ While it is the general rule that the allowance or disallowance of testimony, by one who has violated the rule excluding witnesses, is a matter of the trial judge's discretion, we believe that there has been an abuse of that discretion in the case at bar.

■ The right of a criminal defendant to present witnesses in his own behalf, is a basic constitutional safeguard; consequently, any rule which abridges this right must be examined with scrutiny. There can be no doubt that, prior to the taking of the nolle prosequi, Vernon Lee Ezell could not have been placed under the rule. By virtue of their constitutional rights, persons accused of crimes are entitled to be present at every stage of the trial and are therefore exempt from the rule of exclusion of witnesses. See, e.g., T.C.A. sec. 24-106; *Richards v. State*, 91 Tenn. 723, 20 S.W. 533; *Hughes v. State*, 126 Tenn. 40, 148 S.W. 543. Consequently, Vernon Ezell did not become subject to the rule until that time at which he lost his status as a party, more specifically, when the nolle prosequi was taken. In the opinion of this Court, it was at this time that the trial judge came under a duty to advise Vernon Ezell that he was subject to the rule excluding witnesses and that he would therefore be required to leave the courtroom if he intended to testify.

■ We do not deny that counsel for the defense likewise had a duty to advise the witness as to this change of circumstances; however, we do not believe that this fact discharges the trial judge's obligation, unless it can

be shown that the witness was actually so advised by counsel.

■■ By the second assignment of error, counsel for the defendants insists that the trial judge erred in permitting the trial to proceed from early one morning until about eleven-thirty p.m. that evening. According to the defendants' counsel, this period of time was so unreasonable as to prejudice the defendants' right to a fair and impartial trial. Unfortunately, the record fails to reflect at what times the trial began and adjourned; consequently, this error is beyond our review. As frequently stated by this Court, we are precluded from reviewing errors which are not apparent in the record. See e.g., *Nance v. State,* 210 Tenn. 328, 358 S.W.2d 327; *Roberts v. State,* 212 Tenn. 25, 367 S.W.2d 480; *Rushing v. State,* 196 Tenn. 515, 268 S.W.2d 563.

■■ It is next asserted that the court erred in allowing the trial to proceed after it was shown that three of the defendants' witnesses, all of whom were subpoenaed, had failed to appear. This assignment of error is also beyond our consideration. The record indicates that when the trial judge refused to grant a personal attachment of these witnesses, no objection or exception was made to his ruling. The only response from the defendants' counsel was that they intended to rest their case. It has long been the rule of this Court that errors, to which no objections are made and exceptions taken in the court below, cannot be raised on appeal. See, *Webb v. State,* 173 Tenn. 518, 121 S.W.2d 550; *Troxell v. State,* 179 Tenn. 384, 166 S.W.2d 777; *Blackwood v. State,* 204 Tenn. 682, 325 S.W. 2d 262.

■■ We take this opportunity to remind attorneys that diligence and alertness must be exercised in the pres-

ervation of errors for review in appellate courts. The orderly administration of justice demands that appellate courts maintain certain rules of review. Attorneys are charged with knowledge of these rules and owe a duty to their clients, as well as to the courts, to conscientiously adhere to such rules. When there are assignments of error which do not comply with the prerequisites for appellate consideration, it is, unfortunately, the client who bears the burden of the attorney's mistakes.

Finally, counsel for the defendants argue that it was error for the trial court to admit the testimony of one Gene Bollinger, a Highway Patrolman, to testify as to certain adverse statements made by the defendants prior to the trial. Accordingly, it is asserted that such testimony is inadmissible because of the State's failure to comply with the mandate of T.C.A. sec. 40-2441, which provides as follows:

"Whenever a written or oral confession or admission against interest shall have been made before any law enforcement officer or agency in this state by any person charged with any crime, a copy of such confession, or admission against interest, if written, together with a list of the names and addresses of all persons present at the time such confession or admission against interest was made, shall be given to the defendant or his counsel on demand. If such confession or admission against interest was not reduced to writing, then *a list of the names and addresses of all persons present at the time the confession or admission against interest was made shall be furnished.*

"No confession or admission against interest shall be admitted as evidence in any case unless a copy of the

confession or admission against interest and/or list of names and addresses of persons present at the time the confession was made is furnished as required by this section." (Emphasis added).

In the opinion of this Court, there has been no violation of this statute. The record clearly reflects that there were no written statements; and that a list of the persons who were present at the time the oral statement was made, was furnished to the defendants prior to trial. However, counsel for the defendants emphatically contends that this information was not furnished until some thirty-six hours prior to the trial and that this was so unreasonable as to render noncompliance with the statute. The record reveals only that the information was furnished and does not state at what time it was supplied; consequently, any question concerning the reasonableness of time is beyond our consideration.

In conclusion, we hold that the first assignment of error is meritorious and worthy of our sustainment. We are of the opinion that, when a nolle prosequi is taken as to one of several defendants being tried jointly, it is incumbent upon the trial judge to advise that person that he is subject to the rule excluding witnesses from the courtroom. Where such a witness is not so informed, it is reversible error for the trial judge to subsequently reject this witness on the basis that the witness has violated the rule of exclusion.

On the basis of the foregoing, the lower court's conviction is reversed and a new trial is granted to the defendants.

MR. JUSTICE CHATTIN (concurring).

While I agree with the conclusion reached by the majority opinion, I do so upon other reasons. The record reveals that when the defense called Vernon Ezell to the stand the following occurred:

"General Templeton: Your Honor, he's been in the court room.

"The Court: That's right. He's been in the court room.

"Mr. McPheeters: But he's—

"The Court: (Interposing) I can't help it, he's been in the court room and you asked for the rule and I have to enforce it."

Thus, it appears the rule was invoked by Counsel for defendants. At the time the nolle prosequi was taken, Counsel for defendants were the persons who knew whether Vernon would be called to testify. Certainly the trial judge did not. If Counsel for defendants intended to call him as a witness, it was their duty to place him under the rule.

However, this Court has held the violation of the rule of separation of witnesses does not in itself make a witness incompetent or compel his exclusion. *Nance v. State,* 210 Tenn. 328, 358 S.W.2d 327 (1962).

It is also settled in this State that it is discretionary with the trial judge whether he will permit a witness under the rule to testify, although the witness has heard the evidence. *Pennington v. State,* 136 Tenn. 533, 190 S.W. 546 (1916).

I think the error committed in the instant case was the refusal of the trial judge to hear Counsel and disallow

the witness to testify solely on the ground he had violated the rule.

Under the state of the record, we cannot ascertain whether the testimony of the witness was material. Nor does it appear why Counsel for the defendants permitted the witness to remain in the court room.