STATE of Tennessee, Appellee,

v.

Joseph Craig HAMPTON, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Feb. 11, 1982.

Permission to Appeal Denied by the Supreme Court June 1, 1982.

John W. Derington, Camden, for appellant.

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, Billy C. Blow, Asst. Dist. Atty. Gen., Huntingdon, for appellee.

OPINION

TATUM, Judge.

The appellant, Joseph Craig Hampton, was convicted of reckless driving and unlawful possession of credit cards. He was sentenced to a term of 30 days in the County Jail and assessed a fine of $250 in the reckless driving case. The punishment imposed for unlawful possession of credit cards was a sentence of not less than 1 year nor more than 3 years in the State Penitentiary. Since the appellant has assigned no issue with respect to the reckless driving case, that judgment is affirmed. After considering the issues assigned in the unlawful possession of credit cards case, we also affirm that judgment of conviction.

In the issues presented for review, the appellant insists that the evidence will not support the verdict, i.e., the State did not prove all of the elements of the possession of credit cards offense. He also states that venue was in Decatur County and not in Benton County and that the trial judge

erred in admitting evidence as to the crimes committed in depriving the true owners of the credit cards of their possession. The State submitted the case to this court "without specific recommendation," and stated that neither subsection (a) or (b) of T.C.A. § 39–1946 "appear to be violated by a mere possession of credit cards, regardless of the mental state of defendant, without there having been proved a receiving of the cards with particular mental state." The State did not discuss the evidence.

The appellant offered no proof and the State's evidence is clear and uncontradicted. On the early morning of July 27, 1979, in Atlanta, Georgia, two black males broke into a motel room occupied by Mr. Perry E. McGriff. At gunpoint, the two men took Mr. McGriff's wallet which contained approximately 11 or 12 of his credit cards. They also took a money clip which bore Mr. McGriff's name and which contained approximately $250. The room was dark when the robbery occurred and Mr. McGriff could not identify either of the intruders. Two of his credit cards, which were not in the appellant's possession at the time of arrest, had been used since the robbery.

In June, 1979, Mr. Robert White's automobile was stolen at Percy Priest Lake in Davidson County, Tennessee. Mr. White had left his billfold containing his credit cards in the automobile while he went boating. Mr. White did not know the thieves' identity.

On August 5, 1979, the Sheriff of Benton County observed the appellant driving an automobile, bearing a Georgia license plate, skid across a highway and into a "wash." The Sheriff pursued the appellant's automobile out of Benton County at a high rate of speed. The appellant's automobile was wrecked after it had traveled about one-half mile into the adjoining county of Decatur. Mr. McGriff's billfold containing 11 credit cards that had been issued to him was in the appellant's possession. The billfold also contained Mr. McGriff's personal identifying documents. Mr. McGriff's money clip was also in the possession of the appellant. In addition, the appellant also had Mr. White's billfold containing 3 credit cards and personal identification papers, all of which belonged to Mr. White. The appellant told the Sheriff that he had bought the credit cards on the street in Atlanta.

In considering the issue attacking the sufficiency of the evidence, we first examine the pertinent portion of the indictment:

"That on the day and year aforesaid, before the findings of this indictment, in the County and State aforesaid, the said Joseph Craig Hampton did unlawfully, and feloniously take, unlawfully possess or receive the two or moore (sic) credit cards of Perry McGriff, Jr., and Robert White without the knowledge and consent of said Perry McGriff, Jr., and Robert White with intent to use, sell, or transfer said credit cards in violation of Section 39–1946 of the Tennessee Code Annotated. . ."

An examination of the indictment reveals that the appellant was originally charged with multiple offenses, which are defined in subsections (a) and (b) of T.C.A. § 39–1946. These subsections provide:

"39–1946. Taking credit card or information—Receiving, selling or buying unlawful—Penalty.—(a) A person who takes a credit card or the information therefrom from the person, possession, custody or control of another without the cardholder's consent or who, with knowledge that it has been so taken, receives the credit card or the information with intent to use it or to sell it, or to transfer it to a person other than the issuer or the cardholder is guilty of credit card theft and is subject to the penalties set forth in subsection (a) of § 39–1952. A person who has in his possession or under his control credit cards issued in the names of two (2) or more other persons, without their knowledge and consent, is presumed to have violated this subsection.

(b) A person who receives a credit card that he knows to have been lost, mislaid, or delivered under a mistake as to the identity or address of the cardholder, and who retains possession with intent to use it or to sell it or to transfer it to a person

other than the issuer or the cardholder is guilty of credit card theft and is subject to the penalties set forth in subsection (a) of § 39–1952."

The trial judge instructed the jury to disregard the charges that the cards were "taken" or "received" since there was no evidence that the appellant took or received them in Benton County. The trial judge submitted only the issue to the jury as to whether the appellant possessed the credit cards in violation of subsection (b) of § 39–1946.

Subsection (b) proscribes the possession of a credit card of another with intent to use it or to sell it or transfer it to a person other than the person to whom it was issued or the person who issued it; provided, however, that the possessor had received the credit card with knowledge that it had been lost, mislaid, or delivered under a mistake as to the identity or the address of the person to whom the card was issued (the cardholder or owner). This is a possessory offense; subsection (b) makes criminal the possession of a credit card with fraudulent intent when the person in possession knows that he obtained possession without the knowledge of the owner or without the consent of the owner.

■ The offense is continuous; so long as one retains possession of a credit card of another under the circumstances discussed, he is committing the offense. One can violate the statute even though he does not intend to fraudulently use or transfer the card when he first obtains possession. For example, if one finds a credit card on the street and retains it for the purpose of returning it to the owner or issuer, but later decides to use it to make a fraudulent purchase, he is guilty of the crime from the time he forms the intent to make the fraudulent purchase. The fraudulent intent and possession must coexist for the statute to be violated.

■ The trier-of-fact may consider all of the relevant circumstances of the accused's receipt, use, and possession of the card in determining both the question of intent and

the question of his receipt with the knowledge that it was lost, mislaid or mistakenly delivered.

■ We find abundant evidence upon which the jury could find that the appellant possessed the cards with fraudulent intent. The appellant possessed credit cards which were issued to two third persons and which were found together with identification documents of the persons to whom the cards were issued. He made the statement to police officers that he bought the cards from another on a street in Atlanta. The fact that one possesses credit cards issued to two third persons, without explanation, together with documents that would enable him to use the cards by identifying himself as the persons to whom they were issued, is indicative of fraudulent intent. Also, the jury could logically infer that one who made a purchase of credit cards issued to strangers intended to make a profitable and fraudulent use of them. The purchase of credit cards issued to two separate cardholders also supports the inference that the purchaser knew that they had been lost or mislaid by the cardholders or mistakenly delivered by the issuer.

■ Furthermore, there is substantial evidence that the appellant's possession of the credit cards was preceded by his theft of them. Proof of possession of recently stolen property gives rise to the inference that the possessor has stolen it. *Bales v. State*, 585 S.W.2d 610 (Tenn.1979); *Bush v. State*, 541 S.W.2d 391 (Tenn.1976); *State v. Rice*, 490 S.W.2d 516 (Tenn.1973). The appellant had possession of the stolen credit cards when arrested on August 5, 1979. Mr. White's credit cards were stolen the previous June and the robbery of Mr. McGriff occurred about 8 days previous to the appellant's arrest. The appellant was arrested driving an automobile with Georgia license plates and admitted to police that he was recently in Atlanta, Georgia. The appellant also had in his possession Mr. McGriff's money clip as well as Mr. McGriff's billfold, credit cards and identification papers. The appellant had Mr. White's wallet, credit cards and other documents, including Mr.

White's wife's driver's license which had been left in the stolen automobile. The jury might infer from this circumstance that the appellant intended to unlawfully use the credit cards. The jury could find that a person would have no motive to steal the cards other than to use them. In the same context, one who steals cards from the owner would know that they were "lost" and "mislaid." A card received with knowledge that it is not received with the knowledge or consent of the owner, is received with knowledge that it has been lost, misplaced, or mistakenly delivered within the meaning of T.C.A. § 39–1946(b).

As stated, the evidence is clear that the appellant possessed the credit cards when arrested. For the foregoing reasons, we hold that the evidence was sufficient to support the jury's finding that the possession was without the knowledge and consent of the owners and was accompanied by the intent to use, sell, or to transfer them to a person other than the issuer. The evidence meets the standard required by 13(e), T.R.A.P.

The appellant next insists that venue was in Decatur County and not in Benton County. He predicates this argument on the fact that the credit cards were not found by the officers until the appellant had left Benton County and driven approximately one-half mile into Decatur County. Venue is in the county or counties where a criminal offense is committed. Rule 18, T.R.C.P. Venue is not an element of the crime charged; it may be established by a mere preponderance of the evidence. *Dukes v. State*, 578 S.W.2d 659 (Tenn.Cr. App.1978); *Clariday v. State*, 552 S.W.2d 759 (Tenn.Cr.App.1976). Venue may be shown by either direct or circumstantial evidence or by both. *Hopper v. State*, 205 Tenn. 246, 326 S.W.2d 448 (1959). As stated, the appellant was convicted of a possessory offense. The evidence shows that the appellant was in Benton County when the Sheriff commenced a pursuit of him. The high-speed automobile chase was continuous until the appellant's automobile was wrecked after it had traveled one-half mile

into Decatur County. The evidence is overwhelming that the appellant did not stop his automobile and obtain the credit cards between the time the appellant crossed the Benton County line and traveled the one-half mile before the wreck. The evidence established possession in both counties; he could have been prosecuted in either. The fact that the appellant acquired the cards in Georgia or in Davidson County has no bearing on the venue for prosecution of a violation of T.C.A. § 39–1946(b). This issue is without merit.

The appellant next insists that evidence of the circumstances of the McGriff robbery and of the White larceny was prejudicial and not relevant. We disagree; the above discussion of the evidence and the law indicates that we consider the evidence to be most relevant. The trial judge carefully instructed the jury that the appellant was not being tried for the robbery or the larceny but only for the unlawful possession of credit cards in Benton County.

The judgment of the trial court is affirmed as to both convictions.

WALKER, P. J., and O'BRIEN, J., concur.