IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

FEBRUARY 1997 SESSION

FILED

August 15, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 01C01-9605-CC-00195 |
| Appellee, | * | WHITE COUNTY |
| VS. | * | Hon. Leon Burns, Jr., Judge |
| CHARLES CLAY YOUNG, | * | (Solicitation to Commit First Degree Murder--Two Counts) |
| Appellant. | * | |

For Appellant:

John E. Herbison
2016 Eight Avenue South
Nashville, TN 37204
(on appeal)

David N. Brady
District Public Defender
215 Reagan Street
Cookeville, TN 38501
and
Joe L. Finley, Jr.
Assistant Public Defender
215 Reagan Street
Cookeville, TN 38501
(at trial)

For Appellee:

Charles W. Burson
Attorney General & Reporter

Ruth A. Thompson
Counsel for the State
450 James Robertson Parkway
Nashville, TN  37243-0493

Anthony Craighead
Assistant District Attorney
145 South Jefferson Avenue
Cookeville, TN 38501

OPINION FILED: _____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Charles Clay Young, was convicted of two counts of solicitation to commit first degree murder, a Class B felony. The trial court imposed two Range I sentences of ten-year terms. The sentences are consecutive to each other and consecutive to an unexpired sentence for arson.

In this appeal of right, the defendant presents the following issues for our review:

(1) whether the state proved venue;

(2) whether the state failed to properly authenticate audio tapes played for the jury, and if so, whether the admission of the tapes qualified as plain error;

(3) whether failure of the state to present originals of the life insurance policies qualified as plain error;

(4) whether the admission of his prior convictions for arson and bail jumping constituted plain error; and

(5) whether the sentences were excessive.

We affirm the judgment of the trial court.

In September of 1993, the defendant arrived at the home of his adult nephew, Ricky Young (Ricky), and asked for help in finding a .222 rifle. On the next day, the defendant told Ricky that he was having problems with his ex-wife, Sylvia Jean Young (Jean), from whom he had recently been divorced. He explained that the settlement awarded her the majority of the property and the custody and support of their small child. The defendant, who had a $5,000 life insurance policy on Jean, asked Ricky if he or someone else he knew would be willing to kill Jean for $2,500. Later that same evening, the defendant returned to Ricky's house to inform him that he was also the beneficiary of a $20,000 insurance policy on his older son's life and

2

that he would be willing to pay Ricky $15,000 of the death benefits. In order to collect the death benefits from this policy, Randy, who was the product of a marriage prior to that of the defendant and Jean Young, would also have to be killed. Afterward, the defendant drove Ricky to a residence in the country where Jean dropped off their child for visitation every Friday at 6:00 a.m. The defendant suggested that Ricky should hide behind a tree by 5:45 a.m. and then shoot Jean Young as she walked around the car to remove her child from the car seat. He reasoned that it did not matter what the child saw because he "don't know nothing, no way." The defendant suggested that Ricky could escape on foot through the woods in order to avoid detection.

Ricky Young, who was on probation for arson at the time of his encounter with the defendant, informed officers with the White County Sheriff's Department of the proposal. At their request, he agreed to wear a tape recorder, transmitter, and microphone to an arranged meeting with the defendant. Deputies, approximately one-fourth of a mile away, monitored. During a meeting at the "county house" in White County, the defendant and Ricky Young discussed plans for the two killings over a two to three hour interval. The defendant wanted Jean shot the following Friday morning as she dropped off their child. Randy was to be killed about a week later in a planned "accident." The defendant gave Ricky a photograph of Jean Young and provided him with her license plate number.

When Ricky Young made inquiry about the method of payment, the defendant assured him that he would be paid as soon as the insurance benefits were collected. The defendant gave Ricky the title to his van as collateral.

I

The defendant initially claims that the state did not prove venue by a preponderance of the evidence. Article I, § 9 of the Tennessee Constitution provides that in all criminal prosecutions by indictment or presentment, the accused has a right to a trial by an impartial jury chosen from the county in which the crime was committed. See also Tenn. R. Crim. P. 18. Thus founded in the constitution, proof of venue is necessary to establish jurisdiction. Hopson v. State, 299 S.W.2d 11,14 (Tenn. 1957). Venue may be shown only by a preponderance of the evidence. The burden is on the state. Harvey v. State, 376 S.W.2d 497, 498 (Tenn. 1964); Hooper v. State, 326 S.W.2d 448, 451 (Tenn. 1959). Slight evidence, including circumstantial evidence, will be sufficient if the evidence is uncontradicted. State v. Bennett, 549 S.W.2d 949 (Tenn. 1977).

Here, Ricky Young testified that he met with the defendant on Old County House Road in White County where the two planned the murders of Jean and Randy Young. A White County deputy testified that he saw the defendant with Ricky within the White County boundaries just as the two men concluded their conversation. Because the defendant did not offer any proof to contest this evidence, the state, in our view, was successful in establishing venue by a preponderance of the evidence.

II

Next, the defendant claims that it was error for the trial court to allow audio tapes of his conversation with Ricky because the police officer did not identify the defendant's voice. At trial, the defendant objected to the admission of the tapes for failure of the state to lay a proper foundation. In this appeal, the defendant argues that admission was improper because the police officer never identified the defendant's voice as being the voice on the tape. The state presented two sets of

4

tapes into evidence, one of which was the original and the other of which had been electronically enhanced by the Tennessee Bureau of Investigation. The officer who monitored the conversation identified the enhanced tapes, testifying that they were a recording of the conversation he had overheard between the defendant and Ricky Young. The defense objected, arguing that the enhanced versions "aren't the tapes." When the original tapes were offered as proof, the defense claimed the chain of custody had not been adequately established. Later, during his cross-examination by the state, the defendant acknowledged his own voice on the tape.

Unfortunately, the defense failed to raise the issue in the motion for a new trial. "[I]n all cases tried by a jury, no issue presented for review [to an appellate court] shall be predicated upon error in the admission or exclusion of evidence .... unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e). Thus, the issue has been waived. Had we otherwise reached the merits of the claim, however, we would have ruled in favor of the state.

In order to lay the proper foundation for the entry of audio tapes, the moving party must establish either an unbroken chain of custody or positively identify the very evidence presented. Bolen v. State, 544 S.W.2d 918, 920 (Tenn. Crim. App. 1976). Only one of the conditions must be met. Id. In this case, Officer Goff identified the first set of tapes as those that were enhanced by the TBI. He further stated that he had listened to the enhanced tapes and they were an accurate reflection of the conversation he recorded on the day in question. Thus, the tapes had been positively identified by Officer Goff as being an accurate reflection of the conversation he monitored; it is not, therefore, necessary to establish an unbroken chain of custody.

In this appeal, the defendant also argues that the tapes should not have been admitted because Officer Goff failed to positively identify the voice on the tape as that of the defendant. In support of his argument, he cites to State v. Jones, 598 S.W.2d 209, 222 (Tenn. 1980), asserting that the holding requires a witness to identify the voices before the tape recording is admitted into evidence. We disagree with the defendant's interpretation of the rule in Jones. The case provides in pertinent part as follows:

> [W]e hold that the tape recordings and compared transcripts are admissible and may be presented in evidence by any witness who was present during their recording or who monitored the conversations, if he was so situated and circumstanced that he was in a position to identify the declarant with certainty, and provided his testimony in whole, or in part, comports with other rules of evidence.

Id. at 223.

Here, Ricky Young had already testified that he met with the defendant on September 27, 1993 at Old County House Road. He stated that at that time he wore a microphone, transmitter and tape recorder for the purpose of taping the defendant. He recalled that he spoke to the defendant from two to three hours. Ricky testified that he returned to where Officer Goff and the other officers were monitoring the conversation as soon as the defendant left.

Officer Goff testified that he was present when Ricky Young was equipped with recording equipment for the purpose of recording a conversation between them. He stated that he recorded a leader on the tape, which included the date, place and purpose of the recording, before Ricky left to meet with the defendant. Officer Goff then parked about one quarter of a mile up the road from the meeting point. From that point, he monitored the conversation between his informant and the defendant. As the meeting drew to a close, the officers drove by

6

so as to observe Ricky sitting in the defendant's van.  Later, the defendant acknowledged that it was his voice recorded on the tape.

Rule 901(a) of the Tennessee Rules of Evidence requires tangible evidence to be authenticated and further provides as follows:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims.

Jones, the opinion relied upon by the defendant, preceded the adoption of this rule by almost ten years.  While our supreme court has since cited Jones as a guideline for the admission of tapes, none of our courts have held that the procedure approved in Jones is the exclusive method for the authentication of audio tapes.  See State v. Smith, 868 S.W.2d 561, 577 (Tenn. 1993) (relying on Jones to uphold admission of audio tapes).

Identification of an object need not be absolutely certain.  State v. Woods, 806 S.W.2d 205, 212 (Tenn. Crim. App. 1990); State v. Ferguson, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987).  Whether tangible evidence has been properly authenticated is left to the discretion of the trial court.  Tenn. R. Evid. 901(a); see also Ritter v. State, 462 S.W.2d 247 (Tenn. 1970).  The trial court's decision will not be disturbed absent a clearly mistaken exercise of that discretion.  State v. Baldwin, 867 S.W.2d 358, 361 (Tenn. Crim. App. 1993).  In this case, there was substantial evidence that the tapes were of the recorded conversation between the defendant and Ricky Young.   Under these circumstances, the trial court was correct in finding that the tapes had been sufficiently identified for the purpose of admission into evidence.

7

III

The defendant argues that the state violated the best evidence rule when it failed to present the original insurance policies, instead offering oral testimony and a report.  We disagree.

Tenn. R. Evid. 1002 provides as follows:

To prove the content of a writing, recording, or photograph, the original writing, recording or photograph is required, except as otherwise provided in these rules or by Act of Congress or the Tennessee Legislature.

Tenn. R. Evid. 1004 offers several exceptions to the rule; subpart 4 is pertinent to this case:

The original is not required, and other evidence of a writing, recording or photograph is admissible if--

(1)  Originals Lost or Destroyed.  All originals are lost or destroyed, unless the proponent lost or destroyed them in bad faith; or

(2)  Original Not Obtainable.  No original can be obtained by any available judicial process or procedure; or

(3)  Original in Possession of Opponent.  At a time when an original was under the control of the party against whom  offered, that party was put on notice by the pleadings or otherwise that the contents would be a subject of proof at the hearing but does not produce the original at the hearing; or

(4)  Collateral matters.  The writing, recording, or photograph is not closely related to a controlling issue.

Tennessee Law of Evidence, Neil P. Cohen, et al. (3d ed. 1995), provides:  "[T]he best evidence rule is inapplicable if the writing, recording or photograph is not closely related to a controlling issue.  The facts of each case are critical in assessing whether a writing is collateral."  Id. § 1004.2.

At trial, J. R. Simmons, a marketing supervisor at Commonwealth Life Insurance Company, testified about the status of two life insurance policies as of

October 1, 1993. He stated that Jean Young's $5,000 policy lapsed in June, 1993; but that on the first of October of that year, there was residual value in the policy which would have resulted in payment of the death benefit less only the unpaid premiums. Simmons also testified that the defendant purchased a $50,000 life insurance policy on his son, Randy, which was in full force and effect on October 1, 1993. He acknowledged that the defendant was the beneficiary of both policies.

After Simmons testified, the court admitted as evidence two company reports showing the status and history of the policies. Because the defendant did not object to the evidence and the issue was not raised in the motion for new trial, the issue is waived. Tenn. R. App. P. 3(e); State v. Harrington, 627 S.W.2d 345 (Tenn. 1981).

In any event, the insurance policies, in our view, qualified as collateral matters and within the exception to the rule. While the evidence indicated a motive for the murders, the policies were not essential elements of the offenses. Moreover, there was no material question on the content of the life insurance contracts. The more important determination was whether the defendant was the beneficiary and whether the policy was in force on October 1, 1993. Because the status of the policy as to these factors could not be determined from the original policies, we believe the reports offered qualified as "collateral" and the premium payment status was the most important question. Because there was no error, any analysis under the plain error doctrine, as the defendant suggests, would not be helpful.

IV

As his fourth issue, the defendant claims that the trial court committed error when it allowed in evidence of two of the defendant's past crimes: arson and

bail jumping. Because the defendant failed to raise this issue in his motion for new trial, the issue has been waived. Our analysis must, therefore, be predicated upon the assertion of plain error. See Tenn. R. Crim. P. 52(b).

Tennessee Rule of Evidence 609 allows for the admission of a past conviction for a crime for the purpose of attacking a witness's credibility. There are several criteria that must be met before the evidence can be produced. The crime must either be a felony or a misdemeanor showing dishonesty or false statement. Tenn. R. Evid. 609(a)(2). When the witness is the defendant in a criminal prosecution, the state must give advanced written notice. Id., 609(a)(3). The probative value must outweigh the prejudicial effect. Id. The trial court shall rule on the propriety of such evidence before the witness takes the stand to testify. Id. Here, the trial court did not rule on the admissibility of such evidence until after the defendant had taken the stand. The defense lodged an objection based on irrelevancy and prejudicial effect, but did not object to the procedure used by the trial court.

In our view, the defendant's conviction for bail jumping would be admissible. The defendant was released on bail upon his promise to return to court at a specific time. That he failed to appear as represented reflects upon his credibility.

Evidence of the defendant's past arson conviction was prejudicial. There were no specific facts presented to show the relevance of the arson conviction as to the defendant's credibility. Even so, the evidence of the defendant's guilt, both direct and circumstantial, was overwhelming. The admission of the prior arson conviction did not, in our view, have any effect upon the verdicts.

10

V

Next, the defendant claims the length of his sentences was excessive and should not have been ordered to be served consecutively. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors;

(6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the time of this offense, the presumptive sentence was the minimum in the range absent enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210. Should the trial court find mitigating and enhancement factors, it must start at the minimum sentence in the range and enhance the sentence based upon any applicable enhancement factors, then reduce the sentence based upon any appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. See Ashby, 823 S.W.2d at 169. The trial court, however, should make specific findings on the record which indicate his application of the sentencing principles. Tenn. Code Ann. §§ 40-35-209 and -210.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution: "[C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language.

12

Tenn. Code Ann. § 40-35-115.

The 1989 Act is, in essence, the codification of the holdings in <u>Gray</u>

and <u>Taylor</u>; consecutive sentences may be imposed in the discretion of the trial

court only upon a determination that one or more of the following criteria[1] exist:

> (1)  The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2)  The defendant is an offender whose record of criminal activity is extensive;
>
> (3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
>
> (6)  The defendant is sentenced for an offense committed while on probation;
>
> (7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In <u>Gray</u>, our supreme court ruled that before consecutive sentencing

---

[1]The first four criteria are found in <u>Gray</u>. A fifth category in <u>Gray</u>, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. <u>See</u> Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

could be imposed upon the dangerous offender, as now defined by subsection (b)(4) in the statute, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses.

More recently, in State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." Wilkerson, 905 S.W.2d at 938.

The trial court found no mitigating factors applicable. Because these offenses were committed while the defendant was on probation for another crime, the trial court observed that the defendant had a prior record of felony convictions, arson and bail jumping, and had been unwilling to comply with conditions involving release in the community. See Tenn. Code Ann. § 40-35-114(1), (8). Because each of these enhancement factors were applicable, mid-range sentences of ten years for each of the Class B felonies were appropriate.

Also, the trial court found that the defendant was a dangerous offender and on probation at the time the crimes were committed. After careful review, we

14

have determined that was a proper basis for the consecutive sentencing.  The trial court found that defendant's crimes were particularly egregious because they were against his own family.  It found that the defendant[2] had maintained a willingness and likelihood to kill the victims.  In our view, a lengthy incarceration was warranted to protect society.

The defendant also complains that the trial court erred by ordering the two ten-year sentences to be served consecutively to a prior unserved sentence.  The trial court found that the defendant was on probation when he committed the solicitations.  Rule 32(c)(3), Tenn. R. Crim. P., makes consecutive sentences mandatory if the defendant is convicted of a crime committed while on parole, bail, or on escape; it does not make consecutive sentences mandatory if the crime is committed while the defendant is on probation.  There is, however, a statutory basis for ordering consecutive sentencing in this situation:

> [I]n any case of revocation of suspension [of probation] on account of conduct by the defendant which has resulted in a judgment of conviction against him during his period of probation, the trial judge may order that the term of imprisonment imposed by the original judgment be served consecutively to any sentence which was imposed upon such conviction.

Tenn. Code Ann. § 40-35-310.

Consecutive sentences may be imposed when the "defendant is sentenced for an offense committed while on probation."  Tenn. Code Ann. § 40-35-115(b)(6).  See State v. Moore, 942 S.W.2d 570 (Tenn. Crim. App. 1996) (ruling that both of these statutory provisions allow for consecutive service of the prior unexpired sentence).

---

[2]At the sentencing hearing the state presented part of the defendant's conversation with Ricky Young.  This part had been redacted when played for the jury.  In this dialogue, the defendant brags that he assaulted, with the intention to kill, another ex-wife as well as several other women.

We cannot conclude the trial court erred by ordering the prior unexpired sentence to be served consecutively. We do, however, conclude that the aggregate length of all three sentences is appropriate under the <u>Wilkerson</u> requirements. Thus, this issue is without merit.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
David G. Hayes, Judge


_____
Curwood Witt, Judge