# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### FEBRUARY 1998 SESSION

FILED

April 9, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9707-CR-00276 |
| | ) | |
| vs. | ) | Hamilton County |
| | ) | |
| SONYA DENISE AULTMAN, | ) | Honorable Douglas A. Meyer, Judge |
| | ) | |
| Appellant. | ) | (Accessory After the Fact) |

FOR THE APPELLANT:

JOHN C. CAVETT, JR.
Cavett & Abbott, PLLC
Pioneer Bank Building, Suite 428
Chattanooga, TN 37402

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

MICHAEL J. FAHEY, II
Assistant Attorney General
425 Fifth Avenue North
Second Floor, Cordell Hull Building
Nashville, TN 37243

WILLIAM H. COX
District Attorney General
BARRY STEELMAN
Assistant District Attorney General
600 Market Street - Suite 300
Courts Building
Chattanooga, TN 37402

OPINION FILED:_____

**AFFIRMED**

WILLIAM B. ACREE, JR.
SPECIAL JUDGE

OPINION

The defendant, Sonya Denise Aultman, was convicted by a Hamilton County jury of being an accessory after the fact and was sentenced to two years in the Tennessee Department of Corrections. This is an appeal as of right of the conviction and of the sentence.

The issues presented for review are whether Hamilton County was the proper venue and whether the sentence was proper.

A review of the facts is necessary to determine these issues.

The defendant and co-defendant Jason Rhodes were indicted for first degree murder and especially aggravated robbery. The defendant was also indicted for being an accessory after the fact. Rhodes entered a guilty plea to those offenses and was sentenced to life without parole. The defendant was acquitted of the murder and robbery charges but was found guilty of the accessory charge.

The defendant, a resident of Hattiesburg, Mississippi, began dating Jason Rhodes in early June of 1995. In the latter part of June, she and Rhodes took a trip through several states. During the trip, Rhodes bought a 357 magnum and ammunition. On July 2, 1995, they arrived in Chattanooga.

Upon their arrival in Chattanooga, Rhodes told the defendant that his grandmother owned a Golden Gallon convenience store and that he planned to "gank" the store. The defendant understood this to mean that he planned to rob the store. The defendant attempted to talk Rhodes out of this, and after about two hours, Rhodes said that he would call his brother the next morning and ask his brother to wire money.

At approximately 6:30 a.m. the next morning, Rhodes woke the defendant, and they left the motel. Rhodes drove to a Golden Gallon convenience store and used a pay phone. He told

the defendant to drive his truck to the gas pump and fill it with gas. After doing so, the defendant got into the passenger side of the truck and listened to the radio. After using the phone, Rhodes went into the convenience store and remained in the store for about ten to fifteen minutes. When he returned, he had a plastic bag and cold drinks. Rhodes had the handgun with him but put it under the front seat when he got into the truck.

While Rhodes had been inside the convenience store, he robbed and killed the attendant. However, the undisputed evidence is that the defendant did not know of the murder until after she and Rhodes were arrested.

Rhodes and the defendant then proceeded to Nashville. After about twenty minutes, Rhodes put the plastic bag in the defendant's lap. She saw a substantial amount of money in the bag and knew that Rhodes had taken the money by unlawful means. She did not ask Rhodes any questions because she did not want to know the answers.

After arriving in Nashville, Rhodes and the defendant went to the Hickory Hill Mall where Rhodes made several purchases. They then went to a Days Inn in Nashville. Rhodes told the defendant to check into the motel but not to give her real name. The defendant registered under the name of her sister. That evening, Rhodes and the defendant had dinner at the Red Lobster. Rhodes was armed at all times he and the defendant were in public. After returning from dinner, the defendant called her grandmother as she had done every night during the trip. Rhodes told her not to tell her grandmother where they were. The defendant told her grandmother they were in Atlanta.

In the meantime, the Chattanooga Police Department was investigating the murder and robbery. Rhodes had briefly worked at this convenience store, and he was identified from the surveillance camera. From this information, the police contacted the family of Rhodes and then the family of the defendant.

The defendant's grandmother had a caller I.D. on her telephone and knew that the defendant had called her from Nashville rather than Atlanta, Georgia. The grandmother was told that they were staying at a Days Inn. This information was given to the police.

The next morning, Rhodes and the defendant were located in Nashville, Tennessee and were arrested. The defendant gave statements to the Nashville Police Department and to the Chattanooga Police Department.

The first issue presented for review is whether or not Hamilton County was the proper venue for the conviction of accessory after the fact. The defendant argues that if that she committed this criminal act, then she committed it in Davidson County rather than in Hamilton County.

Article I, § 9 of the Tennessee Constitution provides that in all criminal prosecutions by indictment or presentment, the accused has a right to a trial by an impartial jury chosen from the county in which the crime was committed. Thus founded in the constitution, proof of venue necessary to establish jurisdiction. Hopson v. State, 299 S.W.2d 11, 14 (Tenn. 1957). Venue may be shown only by a preponderance of the evidence. The state has the burden of proof to show that the offense was committed in the county of the indictment . Harvey v. State, 376 S.W.2d 497, 498 (Tenn. 1964); Hopper v. State, 326 S.W.2d 448, 451 (Tenn. 1959). Slight evidence, including circumstantial evidence, will be sufficient if the evidence is uncontradicted. State v. Bennett, 549 S.W.2d 949 (Tenn. 1977).

If one or more elements of an offense are committed in one county and one or more elements in another, the offense may be prosecuted in either county. Tenn.R.Crim.P.18 (b).

T.C.A. §39-11-411 provides in part:

> (a) A person is an accessory after the fact who, after the commission of a felony, with knowledge or reasonable ground to believe that the offender committed the felony, and with the intent to hinder the arrest, trial, conviction or punishment of the offender:
>
> (1) Harbors or conceals the offender;
>
> (2) Provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment.

The jury necessarily found that one or more elements of this crime occurred in Hamilton County. Thus, this issue may be resolved by determining whether the evidence was sufficient to support the jury verdict.

In determining the sufficiency of the convicting evidence, this Court does not reweigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776 (Tenn.Crim.App. 1990), State v. Butler, 900 S.W.2d 305 (Tenn.Crim.App. 1994). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all the factual issues raised by the evidence are resolved by the trier of fact, not this court. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). A guilty verdict, approved by the trial judge, credits the testimony of the State's witnesses and resolves all conflicts of testimony in favor of the theory of the State. State v. Hatchett, 760 S.W.2d 627 (Tenn. 1978). Since a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused, has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the jury. State v. Tuggle, 639 S.W.2d 913 (Tenn. 1982), Butler, at 309. This court will not disturb a verdict of guilty due to the sufficiency of the evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. Tuggle, at 914, Butler, at 309.

The defendant and Rhodes had discussed at length Rhodes' plans to rob a Golden Gallon convenience store. Although the defendant testified that she believed Rhodes had abandoned those plans, nevertheless, she accompanied him to a Golden Gallon convenience store, pumped gas into Rhodes' truck, observed Rhodes go into the store with a loaded gun, and waited ten to fifteen minutes for him to return. She then accompanied him to Nashville. While en route, she learned that the plastic bag contained a substantial amount of money and that Rhodes had taken the money by unlawful means. After arriving in Nashville, the defendant checked them into a motel under a false name, accompanied Rhodes throughout Nashville, and gave false information as to her whereabouts to her grandmother. Although the defendant had ample opportunity to alert the police to the whereabouts of Rhodes, she made no effort to do so.

We believe that there was sufficient evidence upon which the jury could determine that while in Hamilton County, the defendant knew Rhodes had committed a felony and that by

continuing with him, she aided him in avoiding arrest. This issue is without merit.[1]

The second issue presented for review by the defendant is that the sentence was not proper.

The offense for which the defendant was found guilty is a Class E felony. It is undisputed that she is a Range One Standard Offender. The Trial Court imposed the maximum sentence of two years.

At a sentencing appeal, there is a presumption that the trial court's action is correct. This presumption is conditioned upon an affirmative showing in the record that the trial court considered the statutory principles of sentencing and relevant facts and circumstances. The burden of showing the sentence is improper is upon the appealing party. State v. Ashby, 823 S.W.2d 166, (Tenn. 1991). Herein, it appears that the trial court considered the statutory principles of sentencing and relevant facts and circumstances, and, therefore, there is a presumption of correctness.

The Court of Criminal Appeals review of a sentence requires an analysis of: (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. State v. Brewer, 875 S.W.2d 298 (Tenn.Crim.App. 1993); State v. Ashby, Id.

The Trial Court found the following two enhancement factors to apply:

(1) The defendant has a previous history or criminal behavior in addition to those necessary to those necessary to establish the appropriate range;

---

[1]The state argues that the underlying felony is an element of accessory after the fact and that Tenn.R.Crim.P. 18 (b) allows for venue to lie in the county in which the underlying felony was committed. Under this theory, the defendant could have been tried in Hamilton County even if she had never been in that county. Because we have found that the defendant committed elements of the crime in Hamilton County, it is not necessary to address this issue.

(16) The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

With respect to enhancement factor (1), the Trial Court found that the defendant had no prior convictions, but that this factor applied because her registration under a false name at the motel in Nashville constituted criminal behavior. With all due respect for the Trial Court, we believe that this evidence was evidence of the crime and should not be used to enhance the sentence.

The Trial Court found that enhancing factor (16) applied because the defendant accompanied Rhodes in several public places in Nashville while Rhodes was carrying a loaded weapon. We agree this enhancing factor is proper.

The Trial Court found the following mitigating factor to apply, but to a limited degree:

(10) The defendant assisted the authorities in locating or recovering any property or person involved in the crime.

The basis for finding by the Trial Judge was that the defendant contacted her grandmother which led to the arrest. We concur with this finding.

The Trial Judge rejected the following mitigating factors:

(1) The defendant's criminal conduct neither caused nor threatened serious bodily injury;.

(2) The defendant acted under strong provocation;

(3) Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

(6) The defendant because of her youth lacked in substantial judgment in committing the offense;

(9) The defendant assisted the authorities in uncovering offenses committed by other person in detecting or apprehending other person who had committed the offenses;

(11) The defendant although guilty of the crime committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated her

conduct;

(12) The defendant acted under duress or under the domination of another person even though the duress or the domination of another person was not sufficient to constitute a defense to the crime.

We find that there is not sufficient evidence to substantiate these mitigating factors.

In summary, there is one enhancing factor and one mitigating factor. However, as the Trial Judge noted, the mitigating factor should be applied to a limited extent. We agree that it is debatable as to whether or not the defendant contacted her grandmother for the purpose of alerting the police to the whereabouts of she and Rhodes and that only slight weight should be given to this factor. Accordingly, we hold that the enhancing factor outweighs the mitigating factor, and that the sentence of two years was proper.

The remaining issue is whether or not the Trial Court erred in denying alternative sentencing.

In determining whether or not alternative sentencing is appropriate, the sentencing procedure begins with a determination as to whether or not the presumption under T.C.A. 40-35-102 (6) applies. This statute provides:

> "(6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary."

Ashby, at 169.

The defendant is a standard offender convicted of a Class E felony and has no prior criminal record. Therefore, there is a presumption that the defendant is a favorable candidate for alternative sentencing.

If the presumption applies, it is then necessary to determine whether or not the State has overcome the presumption. In determining whether or not there is evidence to overcome the presumption, it is necessary to review T.C.A. 40-35-103 (1) which provides:

"(1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant."

Ashby, at 169.

The Trial Court denied alternative sentencing because confinement was particularly suited in this case to provide a effective deterrent and because anything less than incarceration would depreciate the seriousness of the offense. The evidence presented at the sentencing hearing was that there had been 113 robberies in the last five years at Golden Gallon convenience stores in Chattanooga. This evidence is sufficient to rebut the presumption.

For the reasons hereinabove set forth, we affirm the judgment of the Trial Court ordering the defendant to serve two years in the Tennessee Department of Corrections.

_____
WILLIAM B. ACREE, JR., SPECIAL JUDGE

CONCUR:

_____
JERRY L. SMITH, JUDGE

_____
THOMAS T. WOODALL, JUDGE